**BARTEX RESEARCH, LLC**

v.

**FEDEX CORP., et al.**

**Civil Action No. 6:07–CV–385.**

United States District Court,
E.D. Texas,
Tyler Division.

April 20, 2009.

---

Thomas John Ward, Jr., Ward & Smith Law Firm, Longview, TX, David J. Sheikh, Dina M. Hayes, Paul C. Gibbons, Raymond P. Niro, Richard B. Megley, Jr., Niro Scavone Haller & Niro, Chicago, IL, Eric M. Albritton, Albritton Law Firm, Longview, TX, for Plaintiff.

Bradley E. Edelman, Doris Johnson Hines, John S. Sieman, Finnegan Henderson Farabow Garrett & Dunner,

Washington, DC, James Patrick Kelley, Otis W. Carroll, Jr., Ireland Carroll & Kelley, Tyler, TX, Jeffrey Allen Berkowitz, Finnegan Henderson Farabow Garrett & Dunner, Reston, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

JOHN D. LOVE, United States Magistrate Judge.

Before the Court is a Motion for Stay of Litigation Pending Reexamination of the Asserted Patent filed by Defendants FedEx Corporation, FedEx Express Corporation, FedEx Ground Package System, Inc., and FedEx Kinko's Office and Print Services, Inc. (collectively "FedEx"). (Doc. No. 68.) FedEx has also filed a Reply in Support, (Doc. No. 71), and Plaintiff BarTex Research, LLC ("BarTex") has filed a Response in Opposition, (Doc. No. 70). For the reasons stated below, FedEx's Motion is **DENIED.**

## BACKGROUND

BarTex filed the instant action on August 16, 2007, alleging that FedEx infringes U.S. Patent No. 6,666,377 ("the '377 patent"), entitled "Bar Code Data Entry Device." BarTex asserts that FedEx's shipping labels infringe the asserted claims.

The inventor of the '377 patent is Scott Harris. On October 5, 2007, Illinois Computer Research—the owner of another Harris patent—filed a pleading in an Illinois litigation making clear that the Fish & Richardson law firm, Harris's former employer, had asserted ownership over some of Harris's patents. On February 12, 2008, Fish & Richardson filed a motion suggesting that BarTex was likely to become a party to that litigation to fight over ownership of the '377 patent. On May 19, 2008, BarTex amended its complaint to add Fish & Richardson as a party in this case, and then filed a motion for Partial Summary Judgment of Ownership. (Doc. Nos. 38, 41.) On August 19, 2008, BarTex informed the Court that Fish & Richardson no longer claimed ownership of the '377 patent. (Doc. No. 52.) The Court granted BarTex's Motion for Partial Summary Judgment of Ownership on November 3, 2008. (Doc. No. 61.)

On December 18, 2008, FedEx filed a request for *inter partes* reexamination of the '377 patent with the United States Patent and Trademark Office ("PTO"). On February 20, 2009, the PTO granted FedEx's request, and, in an initial office action, rejected all claims of the '377 patent over the prior art. FedEx filed this Motion for a Stay Pending Reexamination on March 6, 2009. The claim construction hearing in this case is scheduled for May 27, 2009, and trial is set for January 11, 2010.

## APPLICABLE LAW

 District courts have the inherent power to manage their dockets, and this includes the power to stay proceedings. *Soverain Software LLC v. Amazon.com, Inc.,* 356 F.Supp.2d 660, 662 (E.D.Tex. 2005); *see also Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). In deciding whether to stay litigation pending reexamination of a patent, courts primarily consider three factors: 1) whether a stay will unduly prejudice or present clear tactical disadvantage to the nonmoving party, 2) whether a stay will simplify the issues in question and the trial of the case, and 3) whether discovery is complete and whether a trial date has

been set. *Soverain Software*, 356 F.Supp.2d at 662.

█ If the stay is unlikely to prejudice the plaintiff and the motion for stay comes early in the case, courts generally look favorably on granting stays pending reexamination. District Courts have noted a number of advantages in granting a stay pending reexamination: 1) all prior art presented to the Court will have been first considered by the PTO with its particular expertise; 2) many discovery problems relating to the prior art can be alleviated by the PTO examination; 3) in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed; 4) the outcome of the reexamination may encourage a settlement without the further use of the Court; 5) the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation; 6) issues, defenses and evidence will be effectively limited in pre-trial conferences after a reexamination; and 7) the cost of litigation will likely be reduced. *Datatreasury Corp. v. Wells Fargo & Co.*, 490 F.Supp.2d 749, 754 (E.D.Tex.2006). Nevertheless, each court considering a motion to stay pending reexamination must properly weigh the enumerated factors on a case-by-case basis. *Datatreasury*, 490 F.Supp.2d at 755 ("The Court notes that each motion to stay pending reexamination filed in this Court is considered on a case-by-case basis with each cause of action presenting distinct circumstances; there exists no policy in this Court to routinely grant such motions.").

█ It is also pertinent to note that early versions of what became the reexamination statutes expressly provided for a stay of court proceedings during reexamination. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.1983) (listing legislative history). Yet, Congress deemed such an express provision unnecessary because "[i]t is anticipated that these measures [reexamination proceedings] provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner." *Id.* (quoting H.R.Rep. No. 1307 (1980)). Thus, litigation and reexamination are not mutually exclusive alternatives for the parties to test the validity of a patent—they may be concurrent proceedings. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427–28 (Fed.Cir.1988) (rejecting argument that it would waste the PTO's resources to continue a reexamination during a trial and holding that the Commissioner of Patents and Trademarks had no authority to stay patent reexamination pending outcome of case in district court).

## DISCUSSION

█ In this case, FedEx argues that a stay is warranted because 1) BarTex will not suffer prejudice; 2) staying the case will narrow the issues for trial; and 3) FedEx filed this Motion as soon as practicable. BarTex responds that 1) it will be "unduly prejudiced" by a stay; 2) the issues will not be simplified; and 3) because discovery is underway and a trial date has been set, it is too late in the litigation to stay the proceedings pending reexamination.

### I. Prejudice

FedEx contends that BarTex will suffer no undue prejudice if the Court stays the case. *See Photoflex Products, Inc. v. Circa 3 LLC*, No. C 04–03715, 2006 WL 1440363 at *2 (N.D.Cal. May 24, 2006) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice."). FedEx argues that BarTex will not suffer any harm if FedEx continues to make and use the accused products during the stay because BarTex

is a patent holding company that does not make or sell any product or service covered by the '377 patent. It points out that, if BarTex ultimately prevails, it will still be entitled to collect damages accrued during the stay. *See Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 603 (Fed.Cir.1985). FedEx also argues that BarTex will suffer no tactical disadvantage because the estoppel provisions of 35 U.S.C. § 315(c) will prevent FedEx from retrying the same validity arguments at trial that it raises in front of the PTO.

BarTex counters that it will be prejudiced because the *inter partes* reexamination process is extremely time consuming. It argues that, despite the Patent Act's prescription that all reexaminations "be conducted with special dispatch," 35 U.S.C. § 305 (1980), the reexamination process could take years to complete. *See Orion IP, LLC v. Mercedes–Benz, USA, LLC,* No. 6:05–cv–322, 2008 WL 5378040, at *8 (E.D.Tex. Dec. 22, 2008) (noting that the reexamination procedure, in conjunction with a possible appeal to the Board of Patent Appeals and Interferences, "could take years"); *see also Stormedia Texas, LLC v. CompUSA, Inc.,* No. 2:07–cv–025, 2008 WL 2885814, at *2 (E.D.Tex. July 23, 2008) (noting that PTO has not provided guidance on length of time required for reexaminations and therefore the "potential delay for an indefinite period would likely prejudice [the plaintiff]").

BarTex directs the Court's attention to recent studies analyzing the *inter partes* reexamination process. *See ESN, LLC v. Cisco Sys., Inc.,* No. 5:08–cv–20, slip op. at 3–4 (E.D.Tex. Nov. 20, 2008) (citing Roger Shang & Yar Chaikovsky, Inter Partes *Reexamination of Patents: An Empirical Evaluation,* 15 Intell. Prop. L.J. 1, 16 (2006)). Although the PTO reports that the average pendency of an *inter partes* reexamination is 28.5 months,[1] if the patent holder decides to defend its rights, the process is likely to require an average of 43.5 months. *Id.* (citing Institute for Progress, *Reexamining* Inter partes *Reexam* (2008)). If the decision is appealed, it is estimated that the entire process will require an average of 78.4 months, although this estimate may be subject to change since there has never been an *inter partes* reexamination that has gone through the entire reexamination process, including appeal, and made it to completion. *Id.* BarTex argues that granting the stay would prevent BarTex from licensing the '377 patent for 6.5 years and eviscerate BarTex's right to exclusivity until at least 2016.

BarTex also argues that it will be tactically disadvantaged by a stay. Because the stay could last over six years, witnesses could become unavailable, their memories may fade, and evidence may be lost. *See Gladish v. Tyco Toys, Inc.,* 1993 WL 625509 at *2 (E.D.Cal.1993). In addition, the estoppel provisions of 35 U.S.C. § 301 do not apply to newly discovered prior art or non-printed publications. Thus, BarTex argues that FedEx may still be able to challenge the validity of the '377 patent after the reexamination process is completed.

The Court finds that BarTex would be unduly prejudiced if the Court were to grant a stay. A stay could potentially prevent BarTex from enforcing its rights for 6.5 years. This extreme delay, which has been exacerbated by FedEx's delay in requesting reexamination, could allow for a

---

1. The PTO's most recent report indicates that the average pendency for inter partes reexamination (without appeal) is 34.9 months. *See* United States Patent and Trademark Office, Inter Partes *Reexamination Filing Data—December 31, 2008,* available at www.uspto.gov/web/patents/documents/inter_partes.pdf.

loss of critical evidence as witnesses could become unavailable, their memories may fade, and evidence may be lost. *See Gladish*, 1993 WL 625509 at *2.

Furthermore, BarTex may still be entitled to a permanent injunction, even though it does not practice its patent. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) (declining to adopt a categorical rule that non-practicing patent-holders cannot receive injunctive relief); *see, e.g., Commonwealth Sci. and Indus. Research Org. v. Buffalo Tech. Inc.*, 492 F.Supp.2d 600, 607–08 (E.D.Tex.2007), *rev'd on other grounds by*, 542 F.3d 1363 (Fed.Cir.2008) (granting permanent injunction to a non-practicing patent owner). While BarTex will be able to collect damages for infringement occurring during the stay, BarTex may still suffer from irreparable harm during that time. Should FedEx be found to infringe the asserted patent in this litigation, damages alone may not fully compensate BarTex for a lengthy delay resulting from reexamination. The right to exclude, even for a non-practicing entity, may be the only way to fully vindicate the patentee's ownership in the patent. *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327–1328 (Fed.Cir.2008) (explaining that with regard to the first factor in a court's analysis whether to issue a permanent injunction, "[i]n view of [the right to exclude others], infringement may cause a patentee irreparable harm not remediable by a reasonable royalty [or lost profits]"); *cf. Spa Syspatronic, AG v. Verifone, Inc.*, No. 2:07–cv–416, 2008 WL 1886020 at *2 (E.D.Tex. Apr. 25, 2008) (finding that a stay would not prejudice the plaintiff because it could not secure a permanent injunction due to the patent term expiring prior to trial). Therefore, the Court finds that BarTex would suffer undue prejudice resulting from a stay in this case and this factor weighs against granting a stay.

Moreover, motions to stay are considered on a case-by-case basis and there exists no policy in this Court to routinely grant such motions. *See Spa Syspatronic, AG*, 2008 WL 1886020 at *2; *Datatreasury*, 490 F.Supp.2d at 755. To do so would turn reexamination into an administrative process that must be completed before a suit for patent infringement may move forward. Yet, patents are presumed valid, 35 U.S.C. § 282, and reexamination is not required before bringing suit. The potential for use of the reexamination process as a dilatory tactic must be considered. Thus, this Court is hesitant to elevate this process—one that could take years—into a requisite procedure before a lawsuit may move forward. *See Nidec Corp. v. LG Innotek Co.*, No. 6:07–cv–108, slip op. at 11 (E.D.Tex. Apr. 3, 2009); *see also Orion IP*, 2008 WL 5378040 at *8 (noting that the reexamination procedure, in conjunction with a possible appeal to the Board of Patent Appeals and Interferences, "could take years").

## II. Simplification of Issues

■ FedEx asserts that, no matter the outcome of the reexamination, the issues before this Court will be simplified. "If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified." *EchoStar Tech. Corp. v. TiVo, Inc.*, 2006 WL 2501494 at *4 (E.D.Tex. July 14, 2006). On the other hand, "to the extent the reexamination proceeding reaffirm[s] the claims at issue, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims." *Id.* Furthermore, FedEx argues that it is highly likely that at least some of the claims of the '377 patent will be rejected. FedEx points out that the PTO rejected all claims of the '377 patent in its initial office action.

BarTex asserts that reexamination is not a substitute for the proceedings in this Court, and therefore a stay will not necessarily simplify the issues for trial. FedEx may still challenge the validity of the '377 patent with non-printed prior art references or newly discovered prior art, even if the patent survives reexamination will all claims confirmed. In addition, BarTex contends that the PTO routinely rejects all claims in an initial office action, and that this rejection is not a reliable prediction of the final outcome of the reexamination.

The Court is not fully convinced that reexamination will simplify the issues for trial in this case. It is difficult to gauge, at this early stage in the reexamination process, how likely it is that any of the '377 patent claims will ultimately be cancelled or modified through amendment. Based on the evidence currently before the Court, the Court cannot determine the statistical significance of the PTO's initial rejection of all claims. The Court does recognize that, based on the PTO's most recent report, 70% of all *inter partes* reexaminations result in all claims being cancelled and 21% result in claim changes. However, these statistics are based on only 44 *inter partes* reexamination certificates that have issued since the practice was instituted in 2001. *See* United States Patent and Trademark Office, Inter Partes *Reexamination Filing Data—December 31, 2008*, available at www.uspto. gov/web/patents/documents/inter_partes. pdf. Because these statistics are based on such a small sample, they are of limited value. *See ESN, LLC,* No. 5:08–cv–20, slip op. at 7. Further, FedEx may still challenge the validity of the '377 patent with non-printed prior art references or newly discovered prior art. Thus, it is not clear whether the invalidity issues will be clarified much, if at all. Nonetheless, the Court recognizes that a stay pending reex-amination could simplify some issues currently before the Court. For these reasons, the Court finds that this factor weighs only slightly in favor of granting a stay in the instant litigation.

## III. Timing

This case was filed on August 16, 2007. FedEx filed its request for reexamination sixteen months later on December 18, 2008. At this point, this case has been pending for twenty months. The parties are actively engaged in discovery—including, for example, exchanging requests for production of documents and interrogatories, producing documents pursuant to the Discovery Order, and exchanging the initial disclosures required by local patent rules 3–1–3–4. Claim construction has essentially been completed because the parties have agreed to constructions of all terms, and this case will be ready for trial in approximately nine months. As a result, this case is no longer in its infancy.

FedEx argues that it has been diligent in filing this Motion because, to date, little discovery has actually been conducted. FedEx contends that it delayed filing its request for reexamination because BarTex was involved in a dispute over ownership of the '377 patent until November 3, 2008. FedEx argues that it had no reason to request reexamination if it was later discovered that BarTex did not own the '377 patent. Thus, FedEx filed its request a little over a month after the ownership dispute was settled.

While FedEx's concerns over ownership of the '377 patent may offer some explanation as to its delay in seeking reexamination, the Court is not persuaded by FedEx's arguments. A compelling argument can be made that FedEx had ample opportunity to seek reexamination prior to the ownership issue even being raised in this Court. Moreover, when the ownership issue was raised in this Court, it was dealt

with in some detail over a period of multiple months. FedEx did not request a stay of this litigation while the ownership issue was pending nor did FedEx take a position on the issue. Missing from FedEx's assessment of the timing of the reexamination request is an acknowledgment of the fact that it was accused of infringement in August of 2007. Irrespective of the ownership issue arising thereafter, FedEx had every reason to, as promptly as possible, seek reexamination and a stay if that is the option it chose. In sum, the Court cannot conclude that FedEx has acted with requisite diligence in seeking reexamination and a stay.

This case has been pending for twenty months, and FedEx did not seek reexamination for sixteen months after the case was filed. Currently, the parties are fully engaged in discovery with claim construction essentially completed and a trial date set. The circumstances in this case lead the Court to conclude that, given the advanced stage of the proceedings in this case, the third and final factor weighs against granting a stay.

### CONCLUSION

The Court finds that BarTex would suffer undue prejudice resulting from a stay in this case; the issues in this case may not be significantly simplified as a result of the reexamination; and the instant Motion was filed at an advanced stage in the proceedings. Thus, the first and third factors weigh heavily against a stay, while the second factor weighs only slightly in favor. On balance, a stay is not appropriate in this case. For all the foregoing reasons, FedEx's Motion to Stay Pending Reexamination is **DENIED.**

**So ORDERED.**