**METSO MINERALS, INC., Plaintiff,**

v.

**POWERSCREEN INTERNATIONAL DISTRIBUTION LIMITED,** now known as **Terex GB Limited, Terex Corporation, Powerscreen New York, Inc. and Emerald Equipment Systems, Inc., Defendants.**

No. 06–cv–1446 (ADS)(ETB).

United States District Court, E.D. New York.

May 26, 2011.

Cohen, Pontani, Leiberman & Pavane LLP, by Michael C. Stuart, Esq., Lisa Ferrari, Esq., of Counsel, New York, NY, Attorneys for the plaintiff.

Squire Sanders & Dempsey LLP, by George B. Yankwitt, Esq., Mary Margaret Chang, Esq., Andrew H. Fried, Esq., of Counsel, New York, NY, Attorneys for all defendants.

Clauss & Sabatini, PC, by Ava R. Maynard, Esq., of Counsel, New York, NY, Attorneys for defendant Terex Corporation.

Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP, by Andrew E. Curto, Esq., of Counsel, Mineola, NY, Attorneys for the defendant Powerscreen New York, Inc.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

After a seven week trial, the jury in this case found that the defendants had infringed claims 1 through 7 and 9 of United States Patent No. 5,577,618 ("the '618 patent"), which is held by the plaintiff, Metso Minerals, Inc. ("Metso Minerals"). The plaintiff now moves to permanently enjoin the defendants from engaging in activity that infringes the '618 patent. For the reasons that follow, the Court grants this motion.

## I. BACKGROUND

The Court described the background of the '618 patent in detail in its previous decision in this case, *Metso Minerals, Inc.*

*v. Powerscreen Intern. Distr. Ltd.*, 681 F.Supp.2d 309 (E.D.N.Y.2010), and familiarity with that decision is assumed. In general terms, the '618 patent is for a "mobile aggregate material processing plant," a large industrial machine that is generally used to separate mixed rubble into piles of like-sized particles. The primary innovation claimed in the '618 patent is a method of folding the conveyors of the patented invention so that the plant is more easily transported. Metso Minerals practices the '618 patent, manufacturing and selling processing plants—called "screeners"—that incorporate the patent's innovations.

The plaintiff Metso Minerals commenced the present law suit in 2006, alleging that the defendants manufactured and sold products that infringed the '618 patent. Following discovery, claim construction, and summary judgment, the plaintiff tried its case to a jury in late 2010. At the trial, the defendants challenged the validity of the '618 patent, but on December 6, 2010, the jury returned a verdict rejecting this challenge, and finding that the defendants had willfully infringed claims 1 through 7 and 9 of the '618 patent. On January 19, 2011, the plaintiff made the present motion for a permanent injunction precluding the defendants from any future infringing activity. Specifically, the plaintiff seeks to enjoin, among other things, the sale or distribution in the United States of the defendants' Chieftain 1400, Chieftain 1700, Chieftain 1800, Chieftain 2100, Chieftain 2100X, Chieftain 2400, and H5163 mobile screeners, in both tire-mounted and track-mounted form.

The defendants oppose the plaintiff's motion in its entirety. However, the defendants also request, in the alternative, that if the Court does issue an injunction, the injunction not take effect until the defendants complete the redesign of their line of screeners to avoid infringement of the '618 patent. The defendants maintain that they will finish this redesign project no later than the end of June 2011.

## II. DISCUSSION

### A. *eBay* and the Legal Standard for a Permanent Injunction

In 2006, the United States Supreme Court held that, for a post-verdict permanent injunction to issue in a patent case, a plaintiff must satisfy the traditional equitable test for a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). In particular, the Court held that for an injunction to issue, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* A district court applies this four factor test in its sound discretion. *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed.Cir.2010) ("Factual findings made in support of the injunction are reviewed for clear error; the district court's conclusion as to each *eBay* factor is reviewed for abuse of discretion.").

In addition, in two separate concurrences in *eBay*, seven of the nine Justices noted that, while the Supreme Court had rejected the general rule that a verdict of infringement alone provided a basis for a permanent injunction, courts still ought to be conscious of the fact that a permanent injunction is granted in many or most patent cases where infringement is proven. *eBay*, 547 U.S. at 395–96, 126 S.Ct. 1837. Four of these seven concurring Justices further noted that this precedent was par-

ticularly relevant to cases where the patent holder practiced the patent that was infringed. *Id.* at 396, 126 S.Ct. 1837.

With this guidance in mind, this Court now applies the four factor test.

## B. Irreparable Injury

The first of the four permanent injunction factors requires the Court to consider whether the plaintiff has suffered an irreparable injury as a result of the defendants' infringement. This factor necessarily overlaps with the second factor, the adequacy of remedies at law, and thus much of the Court's present discussion will apply to that second factor as well.

■ The ultimate basis for asserting and irreparable injury in the patent context lies is the patent holder's statutory right to exclude others from practicing the patent. *See, e.g., Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed.Cir.2008) ("The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent."); 35 U.S.C. § 154(a)(1). However, the Supreme Court and the Federal Circuit have made it clear that the mere violation of the right to exclude alone does not necessarily result in irreparable injury. *See, e.g., eBay*, 547 U.S. at 392, 126 S.Ct. 1837; *Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed.Cir.2008) (affirming the denial of a permanent injunction after a finding of infringement where the patent holder did not practice the patent). Rather, courts must also look to the business effects of the infringement when determining whether a plaintiff has been irreparably injured.

In this regard, the Court looks both to the businesses of the patent holder and the infringer. As the four concurring Justices in *eBay* noted, an injunction is not appropriate when, "an injunction, and the potentially serious sanctions arising from its violation, can be employed as a bargaining tool to charge exorbitant fees to companies that seek to buy licenses to practice the patent." 547 U.S. at 396, 126 S.Ct. 1837 (internal citations omitted); *accord MercExchange, L.L.C. v. eBay, Inc.*, 500 F.Supp.2d 556, 569, 588 (E.D.Va.2007) (on remand from Supreme Court, declining to grant injunctive relief where it appeared that the patent holder was "merely seeking an injunction as a bargaining chip to increase the bottom line."). Likewise, those Justices opined that, "[w]hen the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest." *Id.* Similarly, where the patent infringement has only minimally affected the plaintiffs business, it will be more challenging to show irreparable injury. *See Presidio Components Inc. v. American Technical Ceramics Corp.*, 723 F.Supp.2d 1284, 1336–37 (S.D.Cal.2010) (denying a permanent injunction where plaintiff did not practice its patent and did not "provide at least some data on any specific sales or customers lost, or what its share of the market is"); *but see Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1330 (Fed.Cir.2008) (questioning in dissent the "high burden" applied by the district court in denying preliminary injunction in *Praxair, Inc. v. ATMI, Inc.*, 479 F.Supp.2d 440 (D.Del.2007), a case in which the plaintiff did practice the patent in question but failed to provide specific evidence of lost customers or diminished market share).

By contrast, when a plaintiff can show that infringement caused a loss of value in its business that is difficult to quantify—such as market share, goodwill, or reputation—then the plaintiff is more likely to have been irreparably injured. *See, e.g.,*

*i4i*, 598 F.3d at 862 (evidence that the plaintiff was caused to "lose market share and change its business strategy to survive" was sufficient to show irreparable harm); *Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir.2007) (upholding grant of permanent injunction where plaintiff provided evidence that infringement resulted in "lost sales", "price erosion", and "lost opportunities to sell other services to the lost customers"). Similarly, while a patent holder may not show irreparable injury based *solely* on its past refusal to license a patent, courts have nevertheless found that such a refusal to license does weigh in favor of finding irreparable injury. *See, e.g., Presidio Components*, 723 F.Supp.2d at 1337 ("Presidio's unwillingness to license the '356 patent weighs in favor of finding irreparable injury."); *Adv. Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F.Supp.2d 554, 560–61 (D.Del. 2008) (noting that a refusal to license a patent to a direct competitor favors a finding of irreparable injury).

■ Considering all of these factors, the Court here finds that the plaintiff has suffered irreparable injury from the defendants' infringement of the '618 patent. The plaintiff practiced the '618 patent and sold screeners that embodied the described technology, and refused to license that patent to any other person. In addition, having reviewed the record at trial, the Court is satisfied that there is sufficient evidence that the plaintiff competed with the defendants for customers, and that the plaintiff lost market share to the defendants as a result of the defendants' infringement. In the Court's view, this loss of market share is difficult to quantify, as it includes a loss of unknown opportunities for positive references, repeat sales, and expanded goodwill. The first factor therefore weighs in favor of the plaintiff.

The defendants object to this conclusion on several grounds. First, the defendants assert that there were several other participants in the market for screeners, and that because the plaintiff and the defendants were thus not "head-to-head" competitors, there is no showing of irreparable harm. (*See* Defs.' Opp. at 4 (citing *Presidio Components*, 723 F.Supp.2d at 1336 and *Humanscale Corp. v. CompX Intern. Inc.*, No. 09–cv–86, 2010 WL 1779963, *3 (E.D.Va.2010)).) However, the defendants cite to no authority from the Federal Circuit—and the Court is aware of no such authority—stating that irreparable harm will exist only when a patent holder competes in a two-competitor market. Rather, Federal Circuit authority in the preliminary injunction context suggests that this is not a requirement to show irreparable harm—particularly when, as here, there is some indication that other market competitors may also be infringers. *See Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 975 (Fed.Cir.1996) ("The fact that other infringers may be in the marketplace does not negate irreparable harm. A patentee does not have to sue all infringers at once. Picking off one infringer at a time is not inconsistent with being irreparably harmed."). In addition, the Court has reviewed the district court opinions relied on by the defendants suggesting that a showing of irreparable harm depends on a two-competitor market, and finds that, to the extent that those cases are not distinguishable from the present case, they are neither binding nor persuasive.

Similarly, the Court is not persuaded by the defendants' second contention, that the plaintiff has waived its right to seek injunctive relief by failing to seek this relief until the present. Obviously, the standard for preliminary injunctive relief in this regard is different from the standard for permanent injunctive relief, and the plain-

tiff's decision not to seek preliminary injunctive relief does not indicate a lack of irreparable harm.

## C.  Sufficiency of Remedies at Law

In the patent context, the second prong of the permanent injunction test is generally treated in tandem with the first prong. *See Acumed*, 551 F.3d at 1327–29 (analyzing the prongs of irreparable harm and adequate remedy at law together); *MercExchange, L.L.C.*, 500 F.Supp.2d at 569 n. 11 (on remand from Supreme Court, stating that "[t]he irreparable harm inquiry and remedy at law inquiry are essentially two sides of the same coin").  Here, for reasons substantially similar to the reasons for finding irreparable harm, the Court finds that the remedies at law available to the plaintiff are insufficient.  As noted above, the Court is satisfied that there is evidence supporting the loss of market share as a result of the defendants' infringement, and that this harm would continue if the defendants did not cease to infringe the '618 patent.  The Court also finds that the effects of this loss of market share, including the loss of goodwill and other intangibles, are not readily compensable by money damages.  This factor thus also favors the plaintiff.

## D.  Balance of Hardships

The Court also finds that the balance of hardships in this case moderately favors the plaintiff.  With reasonable certainty, if an injunction does not issue, the plaintiff will face a hardship in the loss of market share.  By contrast, most of the hardship that the defendants will face from an injunction will derive from the defendants' inability to sell infringing machines in the future.  That hardship, however, is not cognizable.  *See i4i*, 598 F.3d at 863 ("[N]either commercial success, nor sunk development costs, shield an infringer

from injunctive relief.  [The defendant] is not entitled to continue infringing simply because it successfully exploited its infringement." (internal citations omitted)); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed.Cir.2008) ("At the outset, we note that '[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.'" (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n. 12 (Fed.Cir.1986))).

Nevertheless, the defendants assert that they face a cognizable hardship in that an immediate injunction would force them to cancel contracts for screener sales that have already been consummated, resulting in unwarranted reputational damage.  It is in part based on this hardship, as well as the Federal Circuit's preference for the gradual imposition of injunctive relief, that the injunction in this case does not take effect immediately, as discussed in detail below.

## E.  Public Interest

Finally, the Court must consider the public's interest in granting or denying injunctive relief here.  While the public has a general interest in the effective enforcement of patent law, courts analyzing this factor nevertheless also look more specifically at the direct effect that an injunction would have on the public.  *See i4i*, 598 F.3d at 863 ("the touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects").  Thus, the public interest factor may favor an infringer when injunctive relief will result in a socially valuable technology becoming unavailable or substantially more expensive.  *See, e.g., Presidio Compo-*

*nents,* 723 F.Supp.2d at 1339 (finding that the public interest favored not enjoining the defendant from employing a patented technology of "unusual social interest", when the patent holder did not practice the patent); *Advanced Cardiovascular Systems,* 579 F.Supp.2d at 561 ("A strong public interest in maintaining diversity in the coronary stent market has been previously recognized by this court and the Federal Circuit").

Here, there is no indication that consumers who seek to purchase products embodying the '618 patent technology will be unable to do so, or that these consumers would be forced to pay an unreasonable price to purchase them from the plaintiff. Nevertheless, the defendants have asserted that certain of their customers contracted to purchase infringing screeners from them prior to the jury's verdict of infringement, and that these customers—and potentially those customers' customers—would be unfairly harmed by the precipitous grant of an injunction. While the Court finds that this consideration does not tip the balance of this factor in favor of the defendants, the Court does finds that it supports the "sunset" provision in the Court's injunctive order, as discussed below.

## F. The "Sunset" Provision in the Court's Injunctive Relief

Having weighed the four factors to be considered in granting permanent injunctive relief, the Court finds that all four factors favor the plaintiff, and that injunctive relief is appropriate. However, the defendants have asserted that they are redesigning their entire line of infringing screeners to avoid infringement of the '618 patent, and that this redesign will be completed by the end of June 2011. The defendants thus request that, if the Court does grant the injunctive relief, the Court issue an injunction that does not take effect until after its redesign efforts are concluded.

In general, the Federal Circuit has expressed a preference for injunctive relief that is tailored to minimize disruptions to businesses and consumers. *See Broadcom,* 543 F.3d at 704 (affirming an injunction with a delayed commencement because the injunction balanced the plaintiff's interests with a desire to avoid market disruptions); *Verizon Services,* 503 F.3d at 1311 n. 12 (declining to address the issue of whether a delay in injunction was appropriate because a delay was not requested by defendant, but noting that "[the plaintiff] had a cognizable interest in obtaining an injunction to put an end to infringement of its patents; it did not have a cognizable interest in putting [the defendant] out of business."). Here, the defendants have indicated that they will have completed the redesign of their screener line by the end of June 2011, and that, presumably, no orders for infringing screeners will remain pending after that date. The Court thus finds that, in light of the balance of hardship and public interest considerations discussed above, it is appropriate in this case to delay the implementation of injunctive relief until July 11, 2011. Therefore, the injunction set forth below reflects this determination.

## G. Contours of the Injunctive Relief

In addition to their arguments opposing injunctive relief in whole, the defendants also oppose a number of specific aspects of the plaintiff's proposed injunction. The Court has considered these objections, as well as the plaintiffs responses to them, and issues the following injunction:

Commencing Monday, July 11, 2011, the defendants are hereby enjoined for the life of the '618 patent from manufacturing, using, or selling any of the devices found

at trial to infringe the '618 patent—namely, defendants' Chieftain 1400, Chieftain 1700, Chieftain 1800, Chieftain 2100, Chieftain 2100X, Chieftain 2400, and H5163 mobile screeners, in both tire-mounted and track-mounted form. *See Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331, 1346 (Fed.Cir.2003) (noting that a sufficiently specific injunctive order should " 'limit its prohibition to the manufacture, use, or sale of the specific infringing devices' " (quoting *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 479–80 (Fed.Cir.1993))). The defendants are further enjoined from marketing similar, but putatively non-infringing screeners, using the screener names listed above.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiffs motion for injunctive relief is granted, and the Court issues the injunction described above in this decision.

**SO ORDERED.**