NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**O2 MICRO INTERNATIONAL LTD.,**
*Plaintiff-Appellee,*

v.

**BEYOND INNOVATION TECHNOLOGY CO., LTD.,**
*Defendant-Appellant,*

**and**

**FSP TECHNOLOGY, INC. (FORMERLY KNOWN AS SPI ELECTRONIC CO., LTD.), FSP GROUP, AND LIEN CHANG ELECTRONIC ENTERPRISE CO., LTD.,**
*Defendants.*

---

2011-1054

---

Appeal from the United States District Court for the Eastern District of Texas in Case No. 04-CV-0032, Magistrate Judge Charles Everingham, IV.

---

Decided: November 18, 2011

---

ROBERT M. HARKINS, JR., Sedwick, LLP, of San Francisco, California, argued for plaintiff-appellee. Of counsel were RICHARD C. LIN and HENRY C. SU.

DONALD R. MCPHAIL, Duane Morris, LLP, of Washington, DC, argued for defendant-appellant. With him on the brief was KRISTINA A. CAGGIANO. Of counsel on the brief was ROBERT L. BYER, of Philadelphia, Pennsylvania.

---

Before RADER, *Chief Judge*, and LOURIE and PROST, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* LOURIE. Dissenting opinion filed by *Circuit Judge* PROST.

LOURIE, *Circuit Judge*.

Beyond Innovation Technology Co., Ltd. ("BiTEK") appeals from the district court's final judgment in favor of O2 Micro International Ltd. ("O2 Micro"). Final Judgment and Permanent Injunction, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-CV-0032 (E.D. Tex. Sept. 27, 2010), ECF No. 669 ("*Final Judgment*"). The judgment follows a bench trial in which the district court found that BiTEK induced infringement of various claims of O2 Micro's U.S. Patents 6,259,615 ("the '615 patent") and 6,396,722 ("the '722 patent") and imposed a permanent injunction. *Id.* at 1–2.

In this appeal, BiTEK challenges the district court's finding of induced infringement and the grant and scope of the permanent injunction. BiTEK also appeals the district court's precluding testimony from its noninfringement expert as a sanction for violating an order *in limine*. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-CV-0032, 2009 WL 2047617, at *3 (E.D. Tex. July 10, 2009) ("*Sanctions Order*"). Because the district court did not clearly err in its finding that BiTEK induced infringement, did not abuse its discretion in precluding testimony from BiTEK's noninfringement

expert, and did not commit reversible error in granting the permanent injunction, we *affirm*.

BACKGROUND

This patent case relates to integrated circuits that control the power delivered to fluorescent lamps that light electronic displays, such as liquid crystal displays (LCDs) used by computers, laptops, and smart phones. The integrated circuits are referred to as "current inverter controllers," and both O2 Micro and BiTEK design and sell these controllers.

The issues on appeal focus on the commercial relationships and global nature of the marketplace for current inverter controllers and their end products rather than the technical details of the asserted patents or the accused products. BiTEK, which is headquartered in Asia, manufactures current inverter controllers in Taiwan and sells the controllers to companies in Asia that combine them with other circuit components to create inverter control modules. BiTEK's customers in turn sell the modules in Asia to companies such as Samsung, which incorporate the modules into LCD products and import those products into the United States.

This case has a long procedural history. In 2004, O2 Micro sued BiTEK and a number of other defendants in the U.S. District Court for the Eastern District of Texas, alleging that BiTEK induced infringement of the '615 and '722 patents. In a separate lawsuit brought against Samsung in the same court, O2 Micro alleged that Samsung's LCD products contained current inverter technology that directly infringed the '615 and '722 patents.

O2 Micro's infringement action against BiTEK was tried to a jury in 2006. Prior to trial, the district court

entered the following *in limine* order relating to O2 Micro's incorporation in the Cayman Islands:

> 4.   Preclude evidence relating to O2's selection of Cayman Islands for its headquarters: Granted in part and denied in part.  Defendants may refer to the fact that O2 is a Cayman Island corporation.  The motion is granted to the extent defendants seek to offer evidence relating to taxation.

*Sanctions Order*, 2009 WL 2047617, at *1.  O2 Micro prevailed in the first case, and the district court, applying the factors recited in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), imposed a permanent injunction.  About one month later, O2 Micro and Samsung entered into a settlement agreement (the "Samsung Agreement").  The Samsung Agreement is marked confidential and we disclose here only such information as is necessary to explain our decision.  The Agreement contains three key provisions for the purposes of this appeal: a covenant not to sue Samsung or its customers; an "abide by" clause that requires Samsung to abide by the terms of any injunctions entered; and a supply agreement.  J.A. 1969–70.

BiTEK appealed from the district court's judgment.  On appeal, we vacated the district court's infringement judgment and remanded the case for a second trial because the district court failed to resolve the parties' dispute on claim scope and allowed the parties to submit to the jury competing expert testimony on the claim construction issue.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361–63 (Fed. Cir. 2008).

Prior to a second jury trial, the district court restated the *in limine* order regarding O2 Micro's selection of the Cayman Islands as its headquarters.  *Sanctions Order*, 2009 WL 2047617, at *1.  During the pretrial conference,

the district court warned counsel to approach the bench before they "launch into something that's covered by the motion in limine." J.A. 286–87.

During jury selection in the second case, O2 Micro's counsel informed the jury panel that O2 Micro was headquartered in the Cayman Islands. *Sanctions Order*, 2009 WL 2047617, at *2. During BiTEK's allotment for jury selection, BiTEK's counsel stated that "BiTEK was a little bit surprised when it was sued in Texas by this Cayman Island company, O2 Micro." J.A. 467. Shortly thereafter, without approaching the bench, he asked the jury panel the following question:

> Now, are there any of you who have a problem with a company that puts its headquarters offshore on a Caribbean island in order to avoid paying U.S. taxes?

J.A. 472; *Sanctions Order*, 2009 WL 2047617, at *2. O2 Micro objected. The district court, after holding a bench conference and a hearing, found that BiTEK's counsel had willfully violated the *in limine* order and held BiTEK's counsel in contempt. *Id.* At O2 Micro's election, the district court declared a mistrial and reset the case for trial before a new jury. Order, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-CV-0032 (E.D. Tex. July 21, 2009), ECF No. 625; *Sanctions Order*, 2009 WL 2047617, at *3.

The court also imposed a variety of sanctions against BiTEK. Those sanctions included (1) imposing on BiTEK the costs and attorney fees incurred by all parties for the first jury selection; (2) severing BiTEK from the other defendants; (3) awarding the costs and attorney fees incurred by O2 Micro for trying its case against the severed defendants; (4) limiting BiTEK's voir dire time and number of peremptory challenges in the second jury

selection; (5) instructing the jury panel that BiTEK received limited time to conduct voir dire because it intentionally violated a court order resulting in the dismissal of the previous jury and the summoning of the second jury panel; and (6) precluding BiTEK from presenting expert witness testimony on the issue of infringement. *Id.* at *2–*3.

The case then proceeded to the second jury trial. On the second day of trial, upon questioning by the district court, BiTEK withdrew its state law counterclaims of sham litigation. J.A. 8089–93. Because O2 Micro only sought equitable relief for BiTEK's alleged infringement, the case proceeded by agreement to a bench trial. *Id.*

At trial, O2 Micro proffered two instances of direct infringement: Samsung's sale of LCD products in the United States and sales of LCD products in the United States by another company, LG. Regarding Samsung, O2 Micro presented evidence that, in January 2004, one of its employees purchased three Samsung monitors from Samsung Electronics in Texas that contained the accused BiTEK current inverter controllers. J.A. 6.

With regard to LG, O2 Micro did not present any direct evidence that LG sold LCD products in the United States that contained the accused BiTEK current inverter controllers. Rather, O2 Micro presented circumstantial evidence. First, the parties stipulated that LCD monitors that contained the accused models of BiTEK current inverter controllers were sold in the United States. J.A. 6. Second, the parties stipulated that LG, somewhere in the world, sold LCD monitors that contained the same accused models of BiTEK current inverter controllers. *Id.* Third, O2 Micro presented evidence that the United States was the largest market for LCD monitors. J.A. 16. Finally, O2 Micro presented evidence that BiTEK knew

that its current inverter controllers, as part of LCD monitors, were imported into the United States. *Id.*

In addition, O2 Micro presented evidence that BiTEK specifically intended that its accused current inverter controllers would be incorporated into products for sale in the United States. In particular, the district court found that BiTEK provided customers with datasheets for the accused current inverter controllers, provided technical support, entered into an indemnification agreement with a customer, and offered discounts to Samsung after O2 Micro sued Samsung for patent infringement in the United States. J.A. 25–26.

After trial, the district court found that BiTEK infringed the asserted patents by inducing the direct infringement by LG and Samsung and concluded, for the same reasons it delineated after the first trial in 2006, that a permanent injunction should issue. J.A. 23–28. The district court then asked O2 Micro to propose a form of the injunction, J.A. 28, and O2 Micro submitted its proposed language, Submission of Proposed Form of Judgment, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-CV-0032 (E.D. Tex. July 19, 2010), ECF No. 667.

After O2 Micro submitted its proposed language for the injunction, BiTEK conferred with O2 Micro and submitted its proposed language, language that O2 Micro did not oppose. Submission of Amended Proposed Form of Judgment, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-CV-0032 (E.D. Tex. July 21, 2010), ECF No. 668. The district court adopted BiTEK's proposed form, and entered a permanent injunction containing BiTEK's proposed language, including the specific language that BiTEK now challenges on appeal. *Final Judgment*, at 2. Along with the permanent injunction, the district court

entered a final judgment against BiTEK, *id.* at 1, from which BiTEK timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

BiTEK appeals from the district court's infringement finding, its precluding testimony from its noninfringement expert, and the issuance of the permanent injunction. We address each issue below.

### A. Infringement

Under 35 U.S.C. § 271(b), a party that actively induces infringement of a patent is liable as an infringer. To prevail on a claim of induced infringement, in addition to inducement by the defendant, the patentee must also show that the asserted patent was directly infringed. *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1033 (Fed. Cir. 2002). After a full bench trial on the issue of infringement, we will overturn the district court's factual findings only if those findings are clearly erroneous. FED. R. CIV. P. 52(a)(6); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1339 (Fed. Cir. 2003). A finding is clearly erroneous when, after reviewing the record, we are left with the "definite and firm conviction that a mistake has been committed." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

On appeal, the issues of inducement raised by BiTEK relate only to direct infringement by companies that purchased BiTEK's controllers, specifically, LG and Samsung, not to actions by BiTEK. At trial, O2 Micro offered two instances of direct infringement by purchasers of BiTEK controllers: (1) sales of LCD monitors by Samsung; and (2) sales of LCD monitors by LG.

BiTEK argues that O2 Micro failed to prove either instance of direct infringement, and, hence that BiTEK cannot be found to have induced infringement. In particular, BiTEK argues that Samsung was not a direct infringer because the Samsung Agreement was a license that authorized Samsung to sell infringing products. Regarding LG, BiTEK argues that there was no evidence presented at trial that LG sold an accused product in the United States. Because we conclude that O2 Micro presented sufficient evidence that LG directly infringed the asserted claims, we decline to address BiTEK's arguments regarding Samsung and only address BiTEK's arguments that relate to LG.

Turning to its arguments, BiTEK argues that there was no evidence presented at trial that LG sold any products containing BiTEK current inverter controllers in the United States. Specifically, BiTEK argues that the parties' stipulations are insufficient to support the infringement finding because those stipulations do not provide any indication that any LG product with an accused controller entered the United States. Finally, BiTEK argues that the district court erred because its written opinion failed to make a specific finding that LG imported or sold LCD monitors in the United States.

We disagree. A patentee may prove infringement by direct or circumstantial evidence, *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009); a patentee is not required to present direct evidence of infringement, *Symantec Corp. v. Computer Associates International, Inc.*, 522 F.3d 1279, 1293 (Fed. Cir. 2008). Indeed, "[i]t is hornbook law that direct evidence of a fact is not necessary" to meet a party's burden of proof on an issue of fact. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986).

Nor is a patentee required to prove direct infringement to a complete certainty. A patentee is only required to prove direct infringement by a preponderance of the evidence—that it is more likely than not that the direct infringement occurred. *Lucent*, 580 F.3d at 1317–18.

Our decision in *Lucent* illustrates these principles. In *Lucent*, we concluded that substantial evidence supported a verdict of indirect infringement where the patentee presented circumstantial evidence that some party committed direct infringement of the asserted method claims by using the accused product. 580 F.3d at 1317–19. The evidence in *Lucent* consisted of the defendant's sales of the accused product, the defendant's dissemination of instruction manuals with its products, and testimony from the patentee's expert that "[i]t's hard to imagine" that the expert and his wife were the only two people ever to use the accused functionality. *Id.* While that circumstantial evidence was "something less than the weight of the evidence," we concluded that Lucent had presented substantial evidence of direct infringement. *Id.* at 1319 (quoting *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)).

In this case, O2 Micro presented sufficient circumstantial evidence from which the district court could find that it was more likely than not that LG sold LCD monitors in the United States containing the accused BiTEK controllers. As described above, that evidence showed (1) that the accused BiTEK controllers have been sold in the United States; (2) that BiTEK knew that its accused controllers entered the United States as part of LCD monitors and committed acts of inducement with specific intent; (3) that LG had sold LCD monitors that contain the accused BiTEK controllers; and (4) that the United States is the largest consumer market for LCD monitors worldwide. While it is arguable that this circumstantial

evidence would not persuade a particular fact finder in the first instance that it was more likely than not that an accused BiTEK controller entered the United States in an LCD monitor sold by LG, the district court, sitting as the fact finder in this case, did find infringement. We review the district court's infringement finding for clear error, and we find none here.

BiTEK's attack on the district court's failure to mention LG in its ultimate infringement finding is also unsound. Federal Rule of Civil Procedure 52(a) does not require "elaborate, detailed findings on every factual issue raised," *Atlantic Thermoplastics Co. v. Faytex Corp.*, 5 F.3d 1477, 1479 (Fed. Cir. 1993), and a district court's findings of fact are adequate if the findings are "sufficiently comprehensive and pertinent to the issue to form a basis for the decision," *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986) (quoting *Loctite Corp. v. Ultaseal Ltd.*, 781 F.2d 861, 873 (Fed. Cir. 1985)). Here, the district court delineated specific findings of fact relating to LG's sale of LCD monitors and the market for the accused controllers and LCD products. J.A. 6, 16. After making those findings, the district court found that "O2 Micro has proven by a preponderance of the evidence that LCD monitors sold in the United States containing . . . [the accused controllers] directly and literally infringe [the asserted claims]." J.A. 25. Those findings were sufficiently comprehensive and pertinent to the issue of direct infringement.

Thus, we conclude that the district court did not commit clear error in finding that LG directly infringed the asserted claims as a basis for finding induced infringement by BiTEK.

### B. Precluding BiTEK's Noninfringement Expert's Testimony

BiTEK also challenges the district court's sanction of precluding BiTEK from presenting expert testimony on the issue of infringement. BiTEK argues that while the sanction was not an outright dismissal of the case, the sanction nonetheless imposed the "death penalty" on BiTEK's infringement defense. BiTEK argues that the district court abused its discretion, citing a number of reasons: the sanction punished BiTEK for its attorney's misconduct of which BiTEK was not culpable; the other sanctions imposed by the district court were sufficient to compensate O2 Micro; and the other sanctions were sufficient to deter future violations of the district court's orders.

We disagree. Federal courts possess inherent power to sanction litigants and their attorneys, and we review a district court's use of its inherent power for an abuse of discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991). Because a district court's invocation of its inherent powers is not an issue unique to patent law, we apply the law of the regional circuit, here the Fifth Circuit. *See ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1308–09 (Fed. Cir. 2009).

The Fifth Circuit has noted that a court's inherent powers include "the authority to punish for contempt in order to maintain obedience to court orders and the authority to impose reasonable and appropriate sanctions on errant lawyers practicing before the court." *Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). However, because of the severity of the inherent powers possessed by a court and the possibilities of their misuse, a court must exercise "great restraint and caution" when invoking its inherent powers.

*Id.* When imposing sanctions pursuant to its inherent power, a court must make a specific finding of bad faith. *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir.1999); *Chambers*, 501 U.S. at 50 ("A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.") (internal citation omitted). In addition, a court may exercise its inherent power only if essential to preserve the authority of the court. *Natural Gas Pipeline*, 86 F.3d at 467. As a corollary, the sanction chosen must employ "the least possible power adequate to the end proposed." *Id.* (quoting *Spallone v. United States*, 493 U.S. 265, 280 (1990)).

We conclude that the district court did not abuse its discretion in precluding BiTEK from presenting expert testimony on the issue of infringement. BiTEK does not challenge the district court's finding that BiTEK's counsel willfully violated the *in limine* order in bad faith, but instead argues that the district court failed to find bad faith on the part of BiTEK. That argument is without merit. The district court, after finding that BiTEK's counsel acted in bad faith, specifically found that "BiTEK, through its counsel, has undermined the parties' expectations to a trial by a jury selected from the panel summoned according to the regular process of the court." *Sanctions Order*, 2009 WL 2047617, at *2. While BiTEK argues that the sanctions were imposed for conduct that was attributable solely to its attorney, the finding that BiTEK was acting through its counsel comports with the well-settled principle that a client is responsible for its attorney's conduct in the courtroom. *Link v. Wabash R.R.*, 370 U.S. 626, 633–34 (1962).

Similarly, BiTEK's argument that excluding its expert's testimony amounted to a "death penalty sanction"

lacks merit.  Under Fifth Circuit law, a district court imposes "death penalty" sanctions if the sanctions constitute dismissal of the sanctioned party's pleading and entry of judgment against the sanctioned party.  *EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 118–19 (5th Cir. 1993); *see also CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 280 n.7 (5th Cir. 2009) (upholding the district court's exclusion of the plaintiff's damages evidence where the evidence, while important, was not essential to the underlying recovery and noting that "this is not a case in which the district court's exclusion of the evidence constituted dismissal of the plaintiff's claims").

The district court did not impose "death penalty sanctions."  It did not dismiss BiTEK's case.  As an initial matter, O2 Micro, not BiTEK, had the burden of proof on the issue of infringement.  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1467 (Fed. Cir. 1998) (en banc).  As part of its defense to O2 Micro's infringement allegations, expert testimony was not the only evidence that BiTEK could employ.  BiTEK had the ability to advance its noninfringement defense through documentary evidence, testimony from its technical fact witnesses, and testimony from O2 Micro's technical expert on cross-examination, each of which BiTEK presented at trial.  Those classes of evidence may support a judgment of no literal infringement.  *See Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1345–49 (Fed. Cir. 2008) (entering judgment of noninfringement as a matter of law based on testimony by the patentee's technical expert).  Thus, the district court's exclusion of the expert testimony on noninfringement was not the equivalent of entering judgment against BiTEK on the issue of literal infringement.

The exclusion of expert testimony, however, did hamper BiTEK's ability to present its noninfringement theory through the witness it desired.  Otherwise, there would be

no deterrent effect of the sanction. But that prejudice to BiTEK's ability to choose the form or presentation order of its supporting evidence does not recast the district court's exclusion of BiTEK's noninfringement expert into a "death penalty sanction."

With the exclusion of BiTEK's expert testimony properly characterized, we cannot conclude that the district court abused its discretion by imposing that sanction. BiTEK asserts on appeal that the other sanctions imposed by the district court were sufficient to compensate O2 Micro and deter future violations of the court's orders, but we conclude that the district court acted within its discretion. The district court found that monetary sanctions alone were inappropriate because "[t]o hold otherwise would effectively allow a litigant to buy a new jury panel by intentionally violating the court's orders *in limine*." *Sanctions Order*, 2009 WL 2047617, at *3. Regarding the non-monetary sanctions, including precluding testimony from BiTEK's noninfringement expert, we decline BiTEK's invitation to second-guess the district court's conclusion that those sanctions were necessary to deter future violations of its orders, especially after properly characterizing the effect of the exclusion of expert testimony on noninfringement. Thus, we affirm the district court's precluding testimony of BiTEK's noninfringement expert as a sanction for violating an order *in limine*.

## C. Permanent Injunction

Lastly, BiTEK challenges the district court's permanent injunction on two grounds: that the injunctive relief was not warranted under *eBay*; and that the injunction is overbroad and improperly enjoins BiTEK from engaging in activities that occur solely overseas. We address each argument below.

## 1. Issuance of the Injunction

To obtain a permanent injunction, a patentee must demonstrate the following four factors: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391. We review the issuance of a permanent injunction for an abuse of discretion. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 772 (Fed. Cir. 1993). We review the district court's conclusion as to the *eBay* factors for an abuse of discretion and review the district court's underlying factual findings for clear error. *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327–31 (Fed. Cir. 2008).

In its conclusion after the second trial, the district court specifically stated that, under the *eBay* factors, a permanent injunction should issue. J.A. 28. In so concluding, the district court referred to the opinion that the district court issued at the conclusion of the first trial in 2007. *Id.* BiTEK argues that the district court failed to consider significant changes in circumstances after the first BiTEK trial. Specifically, BiTEK challenges the district court's findings regarding the first two *eBay* factors, irreparable harm and inadequate legal remedy. Regarding these factors, the district court issued the following conclusions after the first trial: (1) that O2 Micro has demonstrated an irreparable injury because it directly competes with BiTEK, causing a loss in O2 Micro's market share; and (2) that O2 Micro demonstrated the inadequacy of a legal remedy based, in part, on the difficulty of collecting damages from BiTEK. Memorandum and Opinion and Order, *O2 Micro Int'l Ltd. v. Be-*

*yond Innovation Tech. Co.*, No. 2:04-CV-0032 (E.D. Tex. Mar. 21, 2007), ECF No. 424. We address each of BiTEK's arguments below.

### a. Irreparable Harm

BiTEK argues that the injunction here only remedies past infringement rather than grants prospective relief because O2 Micro only relied on past acts of infringement during the second trial. We do not agree.

The purpose of a permanent injunction is to prevent future infringement rather than compensate a patentee for past infringement or punish an infringer for past infringement. *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1365–67 (Fed. Cir. 1998). As part of the *eBay* analysis to determine if an injunction should issue, however, it is proper for a district court to consider past harm to a patentee when determining if the patentee is entitled to an injunction. *i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 861–62 (Fed. Cir. 2010). Specifically, "[p]ast harm to a patentee's market share, revenues, and brand recognition is relevant to determining whether the patentee '*has suffered* an irreparable injury.'" *Id.* (quoting *eBay*, 547 U.S. at 391).

It is true that the evidence of infringement and the related harm to O2 Micro had lost its freshness in the over three years that lapsed between the first and second trials. But that passage of time, which resulted from BiTEK's first appeal and the district court's trial schedule, does not render the permanent injunction punitive or a remedy to compensate for past infringement. *See i4i*, 598 F.3d at 861–62. No relevant circumstances have changed since the district court found in 2007 that O2 Micro and BiTEK are direct competitors and that BiTEK's infringement caused O2 Micro to lose market share. Thus, the district court's reliance on those findings was

not an abuse of discretion. Nothing in the record in this case indicates that the district court entered the injunction, whose terms are prospective, to compensate O2 Micro for past infringement or to punish BiTEK.

## b. Inadequate Remedy at Law

Regarding the second *eBay* factor, BiTEK raises two arguments. First, BiTEK argues that the Samsung Agreement, executed in 2007, provides strong evidence that O2 Micro has an adequate remedy at law, *viz.*, damages. Second, BiTEK also argues that the district court's finding that O2 Micro would have difficulty collecting damages from BiTEK was "unfounded speculation." Opening Br. O2 Micro Int'l Ltd. at 43, 2011 WL 881998 ("Appellant Br."). Thus, concludes BiTEK, the district court abused its discretion in concluding that O2 Micro did not have an adequate remedy at law.

We disagree. We analyze the adequacy of a remedy at law in practical terms. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959); *i4i*, 598 F.3d at 862 ("Difficulty in estimating monetary damages is evidence that remedies at law are inadequate." (citing *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 703–04 (Fed. Cir. 2008))). Even if we were to assume that the Samsung Agreement contained an unrestricted license, "the fact that a patentee has previously chosen to license the patent," while it "may indicate that a reasonable royalty does compensate for an infringement," is "but one factor for the district court to consider" when determining if injunctive relief is warranted. *Acumed*, 551 F.3d at 1328. "The fact of the grant of previous licenses, the identity of the past licensees, the experience in the market since the licenses were granted, and the identity of the new infringer" may all affect the district court's discretionary decision to determine if the patentee has

shown that it does not possess an adequate remedy at law. *Id.*

The district court had the Samsung Agreement before it in fashioning its findings of fact and conclusions of law, and concluded that an injunction should issue. At trial, O2 Micro presented evidence that Samsung, a customer of and situated downstream from O2 Micro, was in a different market position from BiTEK, which directly competes with O2 Micro. J.A. 28, 1969–71. In addition, the Samsung Agreement does not simply provide for an exchange of money in return for a nonexclusive license, but it contains provisions consistent with O2 Micro's status as a Samsung supplier that competes with other suppliers such as BiTEK. J.A. 1969–71. BiTEK does not dispute these facts, which support the district court's entry of the permanent injunction. *See Acumed*, 551 F.3d at 1328 ("The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." (citing 35 U.S.C. § 154(a)(1))).

We also reject BiTEK's argument that the district court engaged in "unfounded speculation" in finding that O2 Micro would have difficulty collecting money damages from BiTEK because BiTEK lacks substantial assets in the United States. On appeal, BiTEK states that "[a]ll of BiTEK's research and design, manufacturing and sales take place entirely in Asia," Appellant Br. at 7, which supports the district court's finding. In sum, BiTEK has failed to show that the district court abused its discretion in concluding that O2 Micro lacked an adequate remedy at law.

As the applicability of the remaining two factors relevant to the grant of an injunction, *viz.*, the balance of the hardships and the public interest, is not challenged on appeal, we need not address them here.

## 2. Form of the Injunction

BiTEK raises a number of arguments that attack the form of the injunction. First, BiTEK argues that the injunction lacks the specificity required for an enforceable injunction. Second, BiTEK argues that the injunction is improper because it enjoins activities that occur wholly outside the United States, whereas BiTEK is situated two transactions upstream from the acts that O2 Micro alleges directly infringed its asserted patents. Finally, BiTEK argues that the form of the injunction is improper because it enjoins overseas sales to Samsung, which, as discussed above, BiTEK argues is authorized to sell products that are covered by the asserted patents.

O2 Micro responds that BiTEK has waived any objection to the form of the injunction because BiTEK proposed the form of the injunction that the district court entered. O2 Micro also argues that BiTEK also waived its arguments regarding the scope of the injunction because it failed to raise those objections with the district court.

We agree that BiTEK has waived its right to appeal the form of the injunction. BiTEK specifically proposed to the district court the language that it now challenges on appeal and failed to raise before the district court any of the overbreadth and extraterritorial arguments stemming from its proposed language. "The impropriety of asserting a position which the trial court adopts and then complaining about it on appeal should be obvious on its face, and litigants hardly need warning not to engage in such conduct." *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998); *see also Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1258 (Fed. Cir. 2005) (summarizing Federal Circuit and Fifth Circuit precedent on waiver by invited error). Absent unique circumstances, not present here, we generally consider such arguments waived. *E.g.,*

*Key Pharm.*, 161 F.3d at 715–16 (addressing, in "an abundance of fairness," the defendant's argument that the claim construction it advanced below was erroneous where the plaintiff did not object and failed to raise on appeal the doctrines that ordinarily prohibit a party from asserting as error a position that it advocated below); *United States v. Rodriguez*, 602 F.3d 346, 350–51 (5th Cir. 2010) ("Review of invited errors is . . . precluded; such errors are reviewed only for 'manifest injustice.'").

Here, BiTEK submitted to the district court the proposed language that it now claims is "overbroad" and "exceeds the authority of a United States District Court." Appellant Br. at 40–41. While BiTEK asserts that it reserved the right to later object to the language of the injunction that it proposed, we do not find it to be a suitable tactic in litigation to propose language to a court with one's fingers crossed, so to speak, and come back later and disown that language. We might have considered BiTEK's arguments differently had the district court, without briefing, adopted O2 Micro's proposed injunction and had BiTEK properly objected to the form of the injunction. *See Ortho-McNeil Pharm., Inc. v. Lupin Pharm., Inc.*, 603 F.3d 1377, 1381–82 (Fed. Cir. 2010). But we will not review the form of the injunction where BiTEK actively participated in the crafting of the injunction and, in the course of that participation, offered the district court the specific language that BiTEK now claims was an abuse of discretion to adopt. Thus, the district court did not err in holding BiTEK to the language it proposed.

## CONCLUSION

We have considered BiTEK's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

———————————

**O2 MICRO INTERNATIONAL LTD.,**
*Plaintiff-Appellee,*

**v.**

**BEYOND INNOVATION TECHNOLOGY CO., LTD.,**
*Defendant-Appellant,*

**and**

**FSP TECHNOLOGY, INC. (FORMERLY KNOWN AS SPI
ELECTRONIC CO., LTD.),
FSP GROUP, AND LIEN CHANG ELECTRONIC
ENTERPRISE CO., LTD.,**
*Defendants.*

———————————

2011-1054

———————————

Appeal from the United States District Court for the
Eastern District of Texas in case no. 04-CV-0032, Magistrate Judge Charles Everingham, IV.

———————————

PROST, *Circuit Judge*, dissenting.

In this case, only two possible entities can provide the
underlying direct infringement for O2 Micro International

Ltd.'s ("O2 Micro") inducement claim against Beyond Innovation Technology Co., Ltd. ("BiTEK"): LG and Samsung. The majority relies solely on LG's conduct in concluding that BiTEK was liable for induced infringement. I respectfully dissent because I believe that O2 Micro failed to proffer sufficient evidence showing that LG sold an infringing product in the United States—meaning that LG cannot qualify as a direct infringer. Because I also believe that Samsung is not a direct infringer, I would vacate the district court's injunction.

BiTEK argues that O2 Micro failed to proffer sufficient evidence showing that LG sold a device in the United States containing the BiTEK accused product. As a result, contends BiTEK, O2 Micro did not meet its burden of showing that LG directly infringed. The majority disagrees, finding that "O2 Micro presented sufficient circumstantial evidence from which the district court could find that it was more likely than not that LG sold LCD monitors in the United States containing the accused BiTEK controllers." Majority Op. at 10.

I conclude otherwise. The evidence in this case pertaining to LG is sparse. In particular, while O2 Micro purchased Samsung liquid crystal display ("LCD") monitors domestically and introduced them into evidence, the same cannot be said for LG monitors. Moreover, O2 Micro did not submit any purchase orders, product literature, shipping contracts, or employee testimony suggesting that LG devices containing accused BiTEK products were sold in the United States (i.e., common forms of circumstantial evidence in patent cases). O2 Micro's entire case regarding LG's direct infringement rests on four premises shown by the evidence: (1) accused BiTEK products were sold in the United States; (2) BiTEK knew that accused products entered the United States as part

of LCD monitors; (3) LG sells LCD monitors containing the accused BiTEK products worldwide; and (4) the United States is the largest consumer market for LCD monitors worldwide. As the majority explains, the district court failed to specifically conclude from these four premises that LG sold an infringing product in the United States. Instead, the district court merely concluded that someone, either Samsung, LG, or both, sold an infringing product.

Notably, only one of these four premises even mentions LG, and that premise merely represents that LG sold LCD monitors containing the accused products *somewhere in the world*. As BiTEK argues, the LCD monitor market is a worldwide market with many players in addition to the United States. Moreover, LG is not BiTEK's sole customer, and BiTEK is not LG's sole supplier. Thus, the evidence in this case does nothing to preclude the possibility that the chips LG bought from BiTEK were incorporated into products never sold in the United States.

Indeed, a significant gap exists between the four evidentiary premises and the district court's conclusion that someone, either Samsung, LG, or both, sold an infringing product in the United States. This gap can only be bridged with speculation. While the four premises may be adequate to raise the possibility that LG sold an infringing device in the United States, that possibility is entirely speculative, failing, as it does, to eliminate a multitude of other comparable possibilities. Therefore, I view the evidence in this case as insufficient to prove that LG "more likely than not" sold an infringing product domestically. I would also characterize the district court's general infringement holding that O2 Micro proved by preponderant evidence that either Samsung, LG, or both,

sold an infringing product in the United States as clearly erroneous to the extent that conclusion is aimed at LG. Given this lack of evidence regarding LG's sales, I would conclude that LG cannot qualify as an underlying direct infringer for O2 Micro's inducement claim against BiTEK. Because I also believe that Samsung is not a direct infringer, a question not reached by the majority, I would vacate the district court's injunction.